## Hassis v. Signorelli

*Charles Mackin, Jr.,* for plaintiffs.
*John B. Leete,* for defendant.

FINK, *P.J.,* November 11, 1980—1. Defendant was the owner of a certain business property situate on Main Street, Galeton Borough, Potter County, Pa., which prior to July 9, 1979 was used as a variety store on the first floor and contained a total of six apartments in the story or stories above.

2. On July 9, 1979 plaintiffs, as purchasers, entered into an agreement with defendant, as seller, to purchase the building for $35,000, although defendant would have the right to use the store portion of the building rent-free until December 31, 1979.

3. Settlement on the transaction pursuant to the agreement was held on September 24, 1979 in the law office chosen by the real estate broker and situate in Coudersport, Potter County, Pa.

4. At time of settlement, plaintiffs requested a list from defendant as to what was to be included in the sale, and defendant agreed to provide same but never did in fact do so.

5. There was an agreement outside of the written terms of the agreement of sale whereby defendant

would permit a $600 reduction from the original purchase price to compensate plaintiffs for the six cooking stoves that defendant, without permission, removed from the subject premises.

6. Defendant also removed individual heating stoves from each of the six apartments for which no payment was made by defendant to plaintiffs, nor was permission given by plaintiffs to so remove same. The removal took place after the agreement of sale had been signed.

7. Plaintiffs replaced the heaters improperly taken by defendant by the purchase of one for $60, by getting two other heaters from his own house, by borrowing two other heaters and getting an additional two from a rental property they owned in Shinglehouse.

8. Prior to the agreement of sale and in the presence of realtor Beard, defendant orally informed plaintiffs that the roof to the subject premises was in good condition.

9. Plaintiffs could observe the roof on the subject property only from standing on the ground higher than the roof immediately in back of the building, said roof being a flat roof.

10. A closer visual inspection of the roof would not necessarily disclose the fact that said roof leaked prior to the agreement of sale.

11. At the time of closing, it was agreed between the parties that the refrigerator situate on the premises, together with the removable, unattached shelving and counters could be removed by defendant.

12. Plaintiffs prior to the signing of the agreement of sale went on the premises for the purpose of conducting a thorough inspection thereof, and saw all apartments except one which defendant in ef-

fect reported as being inaccessible to plaintiffs. The inaccessible apartment was the only apartment in the building which would have shown the leaking room, in that there was peeling plaster on the ceilings and stain marks on the ceilings and walls.

13. At closing the parties extended the time in which defendant had to remove himself from the store and his own apartment in the subject building from December 31, 1979 to January 13, 1980.

14. During the extended period of time as above mentioned, defendant removed counters, shelving, partitions, canopies, and fluorescent lighting which had been affixed to the building in a permanent manner without the permission of plaintiffs, and without any reduction in purchase price.

15. Plaintiff, Bruce Hassis, observed defendant in the process of "stripping" the store, but took no steps to deter him or even inquire as to what he and his agents were doing.

16. After defendant removed himself from possession of the premises on January 13, 1980, plaintiffs renovated the store and rented same to Widmann's Discount. Prior to the "stripping" of the store by defendant, there were counters literally placed in the floor, which when removed, created a vacancy of flooring 30 inches wide and running a total of 77 feet in length (59 feet and 18 feet). There were also bare wires hanging out from the walls and ceilings, and the walls were "stripped" down to the studding (although it was never clear what materials, if any, the walls were made of prior to the agreement of sale).

17. It would have taken $4,571, not depreciated, to replace the shelves that were permanent and repair the flooring.

18. Plaintiff, Bruce Hassis, patched the roof

himself where he worked for two to three hours using materials he had, except for five pounds of tar, the cost of which was $15.00, plus a new roll of fiberglass, the cost of which is unknown.

## CONCLUSIONS OF LAW

1. The parol evidence rule does not apply when it relates to testimony or conversations having to do with portions of the agreement outside of the written agreement.

2. Plaintiffs failed to carry their burden of damages as to the unit heaters, or the roof above and beyond $15.

3. Where plaintiffs failed to sustain their burden of damages in their case-in-chief as to damage done to the store as a result of the improper removal of fixtures by defendant in the store, but defendant presents expert testimony which may serve as a lawful basis for damages, and where there is no motion by defendant at the conclusion of plaintiffs' case concerning failure to carry burden as to damages, the trier of fact has to view the entire record and must consider proof presented in defendant's case as it relates to plaintiffs' burden of proof as to damages.

## DISCUSSION

We understand the parol evidence rule to be that a written agreement purporting to be complete and regular on its face cannot be varied, altered or contradicted by parol evidence unless it is proved by clear, precise and indubitable evidence that a portion of the writing was either omitted or misstated as the result of either fraud, accident, or mistake.

Paragraph 12 of the agreement of sale of July 9,

1979 between the parties in the instant case indicates, in essence, that the buyers either inspected the property, or waived inspection and agreed to purchase it in its "present condition."

It is the finding of this court that defendant clearly committed fraud upon plaintiffs by orally informing plaintiffs that the roof was good while at the same time keeping plaintiffs from viewing the only apartment from which it could be easily determined that the roof leaked. However, the entire problem with which this court is confronted is one of damages. We have no difficulty in finding that defendant improperly removed six unit heaters from each of the six apartments; committed fraud on plaintiffs as to the roof as aforementioned; improperly removed numerous fixtures and portions of the building in the store portion thereof; and even though the latter was done by agents of defendant within view of plaintiff, Bruce Hassis, plaintiffs are not deemed to have waived their cause of action thereby.

We do find a very unusual circumstance in this case as it relates to the majority of the damages, viz., damages accruing from defendant's onslaught of the store portion of the property. Plaintiffs presented an expert witness who rendered an opinion as to what it would cost to ". . . repair it to the condition where it could be appealing—adequate to be rented for a commercial property. . . ." This testimony went in without objection from defense counsel; however, no objection notwithstanding, plaintiffs still have the burden of proving their damages under the law. The expert opinion was the only evidence presented by plaintiffs on damages to the store portion of the building, which was by far the major portion of the damage with which we are

here concerned. It is obvious that the testimony of plaintiffs' expert, although very credible, has no relationship whatever to the legal basis of damages to which plaintiffs may be entitled under plaintiffs' causes of action.

Had defendant made a motion for a compulsory nonsuit at the end of plaintiffs' case as it related to the cause of action concerning the store portion of the building, this court would have had to grant same on the grounds that plaintiffs failed to establish any legal damages on account of defendant's actions. However, there was no such motion.

Defendant then subsequently put his own expert on the stand in defendant's case-in-chief who in fact testified as to what it would cost to repair the store portion of the premises to the condition that it was immediately prior to the same, which this court would understand to be a proper and legal measure of damages, even though the materials were not depreciated.

Thus, the question is presented to this court as to whether or not this court is bound to look at the entire record to determine whether plaintiffs have carried their burden, viz., whether this court can consider testimony adduced in defendant's case-in-chief in determining whether plaintiffs carried their burden. This court finds that absent the motion for a nonsuit at the conclusion of plaintiffs' case, it is the opinion of this court that it is the duty of this court to look at the entire record for the purposes above stated.

The testimony of Joseph Pagano was that in his opinion, it would take $1,285 in labor, and $3,286 in materials. It is obvious that the labor would be the same whether the materials were depreciated or not. The question now becomes whether this court

can guess as to how much depreciation should be allowed to the materials.

There was testimony that the materials in the building which were in fact removed were quite old. Furthermore, the testimony would indicate that the materials which were removed were in fact being used in the store immediately prior to the sale, and apparently were at least good enough to be removed by defendant.

This court is of the belief that a grave injustice would occur if the costs of the materials were altogether ignored.

This court is further of the belief that plaintiffs may not have been entitled to covering the 30-inch, 77-foot long floor space with flooring when it would not appear by the evidence that there was any there to begin with.

With the admission by this court that the figure which we now attribute to the materials properly depreciated is little more than a mere guess, we do hereby attribute the sum of $700 for materials.

## ORDER

And now, November 11, 1980, we therefore find plaintiffs are entitled to recover the following: $1,285 for labor; $15 for tar; $700 for materials for a total of $2,000, plus interest at the rate of six percent per annum from January 13, 1980.